IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICRON TECHNOLOGY, INC. and MICRON SEMICONDUCTOR PRODUCTS, INC., | C.A. No. _____ |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| NETLIST, INC., | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

Plaintiffs Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron") seek a declaration that Micron does not directly or indirectly infringe United States Patent No. 12,373,366 (the "'366 patent"),[1] either literally or under the doctrine of equivalents, as follows:

## NATURE OF THE ACTION

1.      Micron brings this is an action for a declaratory judgment arising under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

2.      Micron is the only United States founded memory semiconductor designer and manufacturer and has become a world leader in innovative computer-memory and data-storage solutions, employing thousands of people in Idaho, where Micron maintains its headquarters, throughout the United States, and abroad.  Indeed, Micron recently announced plans to invest

---

[1] Micron will file a copy of U.S. Patent No. 12,373,366 as an exhibit to the Complaint when available.

approximately $200 billion in semiconductor manufacturing and R&D in Idaho, New York and Virginia to enhance domestic supply and technology leadership and meet the anticipated AI-driven demand. Micron's success, however, has come with a price: fending off baseless assertions of patent infringement by patent enforcement entities. These patentees attempt to shake down Micron for license fees and, if Micron refuses, they attempt to strong-arm compliance by forcing Micron to spend millions of dollars engaging in necessarily complex and protracted patent litigation.

3.      One such patentee that Micron has had to fend off is Defendant Netlist. Unable to compete with innovators in the marketplace, Netlist's "business" has become bringing patent infringement suits, apparently to drive up litigation costs and pressure the true innovators, such as Micron, to pay what amounts to a business tax, i.e., pay Netlist to settle meritless suits. True to that mission, Netlist has targeted Micron repeatedly by making non-credible infringement allegations of facially invalid patents.

4.      For example, Netlist's attack began when it filed suit against Micron on the very same day that it sent Micron a demand letter. Of course, Micron did not receive this disingenuous letter until after Netlist had already filed the lawsuit in the U.S. District Court for the Western District of Texas. The lawsuit asserts that Micron infringes claim 15 of U.S. Pat. No. 8,301,833 ("the '833 patent"). Particularly troubling is the fact that Netlist had to know—as any reasonable person would have known—that claim 15 of the '833 patent was invalid. Notably, before Netlist filed its lawsuit against Micron, the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") already had invalidated a claim of a related Netlist patent that is virtually identical to claim 15 of the '833 patent. Put simply, Netlist filed an infringement lawsuit against Micron based on what it knew to be an effectively invalid patent claim. What's more, Netlist misleadingly withheld from Micron key information relevant to the invalidity of the '833 patent. In its demand

letter, Netlist trumpeted alleged victories that it had before the PTAB relating to the '833 patent, but conveniently left out the critical fact that the PTAB had already found a virtually identical claim in a related Netlist patent to be invalid.

5.     Netlist also filed another Western District of Texas lawsuit making non-credible infringement allegations for three more of its patents, including U.S. Patent No. 9,824,035—a patent that the PTAB later determined was invalid for the majority of the asserted claims.  Netlist also asserted multiple patents in two Eastern District of Texas litigations—but all of the asserted claims of these patents were ultimately either withdrawn from the litigations by Netlist or determined invalid by the PTAB.  In bad faith, Netlist unreasonably opposed staying its litigations and continued to litigate its invalid patents.

6.     This action arises out of Netlist's continued non-credible threatened assertion of patents against Micron.

7.     Specifically, on April 28, 2021, Netlist's Chief Licensing Officer, Marc Frechette ("Frechette"), sent a letter to Micron's President and CEO, Sanjay Mehrota, at Micron's headquarters in Boise alleging that Micron's DIMM products infringe numerous Netlist patents including parents of the '366 patent including U.S. Patent Nos. 8,301,833 (the "'833 patent"), 9,158,684 (the "'684 patent"), and 9,928,186 (the "'186 patent"), and related patents including "any subsequently issued patents claiming priority to those patents," and demanding that Micron take a license to Netlist's patents.

8.     Netlist filed two lawsuits against Micron in the Western District of Texas, Case Nos. 6:21-cv-00439 and 6:21-cv-00431, alleging that Micron's DIMM products infringe some of those patents and later filed suit against Micron in the Eastern District of Texas, Case Nos. 2:22-cv-00203 and 2:22-cv-00294, asserting other Netlist patents against Micron's DIMM products.

9.    Netlist continued its allegations that Micron's DIMM products infringe its patents and its demand that Micron take a license in numerous other communications between the parties, including a May 19, 2021 letter from Frechette stating Netlist's "desire to engage in discussions to reach agreement on royalty-bearing licenses to Netlist patents for RDIMM, LRDIMM, and NVDIMM products offered by Micron" and other follow-up letters sent on, for example, May 28, 2021 and June 14, 2021.

10.    Netlist raised these allegations in bad faith knowing that many of its patent claims were invalid and providing no comparison between Micron's DIMM products and Netlist's patent portfolio that could credibly support the allegations.

11.    Despite raising the allegations in bad faith, Netlist repeatedly insisted that Micron take a license to Netlist's entire patent portfolio.  For example, as stated in a July 9, 2021, letter sent by Frechette to Micron, Netlist urged Micron to meet "to discuss our patent portfolio" and to bring Micron "decision makers" because Netlist "will have individuals with decision making authority in attendance."

12.    Netlist continued its allegations to the present day and Netlist representatives came to Micron's Boise headquarters on 34 separate occasions from July 2023 to October 2023 to conduct inspections of Micron's electronic design files of DIMM products in connection with its patent lawsuits.

13.    Netlist also accused Micron, and former subsidiary Micron Technology Texas, LLC ("MTT"), of infringing patents with respect to Micron's DDR4 and DDR5 DIMM products and other products in *Netlist, Inc. v. Micron Technology, Inc., et al*., No. 25-cv-00558-JRG (E.D. Tex.) despite knowing that MTT was a dissolved corporation and that Micron does not reside in the Eastern District of Texas nor have a regular and established place of business therein, facts that

render venue in the Eastern District of Texas improper. Thus, an actual controversy exists regarding Netlist's claim that Micron's DDR4 and DDR5 DIMM products infringe the '366 patent.

14.     Micron seeks a declaratory judgment that it does not infringe the '366 patent.

## THE PARTIES

15.     Micron Technology, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 8000 S. Federal Way, Boise, Idaho, 83716.

16.     Micron Semiconductor Products, Inc. is a corporation organized and existing under the laws of the State of Idaho, with its principal place of business at 8000 S. Federal Way, Boise, Idaho, 83716.

17.     Netlist, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 111 Academy Drive, Suite 100, Irvine, California 92617.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over the claim for declaratory judgment of non-infringement under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

19.     This Court has personal jurisdiction over Netlist, a corporation organized and existing under the laws of the State of Delaware.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)–(c) because Netlist is subject to personal jurisdiction in this District.

21.     An immediate, real, and justiciable controversy exists between Micron and Netlist as to whether Micron has infringed the '366 patent.

22.     As the examples above establish, Netlist has harassed Micron for years with unsupported allegations that Micron's DIMM products infringe "any subsequently issued patents

claiming priority to" the '833 patent, the '684 patent, and the '186 patent, which includes the '366 patent, and other Netlist patents, demanding that Micron take a license, and threatening litigation. Netlist also filed a complaint against Micron and MTT in the Eastern District of Texas alleging Micron's DIMM products infringe its patents despite the fact that Netlist knows the venue is improper and MTT is dissolved.

23.     Netlist also alleged that Samsung Electronics Co., Ltd.'s DDR4 and DDR5 DIMM products infringe Netlist's patents in *Netlist, Inc. v. Samsung Electronics Co., Ltd., et al.,* Eastern District of Texas Case No. 2:25-cv-00557 and other litigations.

24.     Because this action presents an actual controversy with respect to the '366 patent, the Court may grant the declaratory relief sought pursuant to 28 U.S.C. § 2201 *et seq.*

<u>**COUNT I**</u>
<u>**(Declaration of Non-Infringement of the '366 Patent)**</u>

25.     Micron restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

26.     Netlist has asserted an ownership interest in the '366 patent by identifying Netlist, Inc. as the "Applicant" and "Assignee" identified on the face of the '366 patent.

27.     The '366 patent has three independent claims: claim 1, 16, and 29 (previously numbered claims 2, 44, and 58 in Netlist's June 3, 2025 "Supplemental Amendment and Examiner Interview Summary).  Claim 1 reads as follows:

| Element | Claim 1 Language |
|---|---|
| Preamble | A dual in-line memory module (DIMM) configured to fit into a memory slot connector of a system board of a computer system, the memory slot connector including a set of power conduits, a set of data conduits, and a set of address and control conduits, wherein data signals are transferred between the system board and the DIMM via the set of data conduits, and address and control signals are delivered from the system board to the DIMM via the |

6

| Element | Claim 1 Language |
|---------|------------------|
|         | set of address and control conduits, the DIMM comprising: |
| (a)     | a printed circuit board (PCB) having edge connections configured to fit into the memory slot connector of the system board, the PCB including: |
| (a1)    | a first set of edge connections configured to be electrically connected to the set of power conduits and operable to deliver to the DIMM power from power rails of the system board via the set of power conduits, wherein the power delivered to the DIMM from the power rails of the system board is the only power received by the DIMM; |
| (a2)    | a second set of edge connections configured to be electrically connected to the set of data conduits, and |
| (a3)    | a third set of edge connections configured to be electrically connected to the set of address and control conduits, |
| (a4)    | a set of voltage supply lines electrically connected to the first set of edge connections and configured to receive the power delivered to the DIMM from the power rails of the system board by way of the memory slot connector of the system board and the first set of edge connections of the DIMM, |
| (a5)    | set of data lines electrically connected to the second set of edge connections, and |
| (a6)    | a set of address and control lines electrically connected to the third set of edge connections; |
| (b)     | a controller including a voltage monitor circuit and nonvolatile memory, the controller coupled to the PCB and to an input voltage supply line of the set of voltage supply lines, the voltage monitor circuit configured to: (i) monitor an input voltage supplied via the input voltage supply line; (ii) generate a trigger signal upon detecting a trigger condition; and (iii) transmit the trigger signal to at least one other portion of the controller, wherein the controller is configured to perform, in response to the trigger signal, a write operation to write data into the nonvolatile memory, and wherein the trigger condition occurs when the input voltage exceeds a first threshold voltage; |
| (c)     | a set of components coupled to the PCB, the set of components including a plurality of double data rate (DDR) synchronous |

| Element | Claim 1 Language |
|---------|------------------|
| | dynamic random access memory (SDRAM) devices coupled to the set of address and control lines and to the set of data lines, the DDR SDRAM devices being operable to receive or output data signals via the set of data lines based on address and control signals received from the system board via the set of address and control lines; and |
| (d) | first, second, third, and fourth converter circuits coupled to the PCB and to the input voltage supply line, and configured to receive power from the input voltage supply line and to deliver power via first, second, third, and fourth regulated voltage lines, wherein the set of components includes: |
| (d1) | a first component configured to receive power via at least the first regulated voltage line; |
| (d2) | a second component configured to receive power via at least the second regulated voltage line; |
| (d3) | a third component configured to receive power via at least the third regulated voltage line; and |
| (d4) | a fourth component configured to receive power via at least the fourth regulated voltage line; |
| (e) | wherein each component of the set of components: |
| (e1) | (i) is electrically connected to one or more of the first, second, third, and fourth regulated voltage lines; and |
| (e2) | receives power only via the one or more of the first, second, third, and fourth regulated voltage lines, |
| (f) | wherein the plurality of DDR SDRAM devices includes: |
| (f1) | a first group of at least five DDR SDRAM devices that are each connected to a first chip select line configured to electrically conduct a first chip select signal; |
| (f2) | a second group of at least four DDR SDRAM devices that are each connected to a second chip select line configured to electrically conduct a second chip select signal; |
| (g) | wherein when power from the power rails of the system board is provided to the DIMM and each group of the first and second |

| Element | Claim 1 Language |
|---|---|
|  | groups of DDR SDRAM devices is not in self-refresh mode: |
| (g1) | the first group of DDR SDRAM devices is configured to be enabled, in response to the first chip select signal, to receive or output at least 40 1-bit DDR data signals in parallel via at least 40 data lines of the set of data lines independently of whether the second group of DDR SDRAM devices is enabled, in response to the second chip select signal, to receive or output an integer number of 1-bit DDR data signals in parallel via an integer number of data lines of the set of data lines; |
| (g2) | the at least 40 1-bit DDR data signals include at least 32 1-bit wide DDR data signals and at least eight 1-bit DDR error-correcting code (ECC) data signals; and |
| (g3) | wherein the sum of the at least 40 data lines and the integer number of data lines equals a total number of data conduits of the set of data conduits of the memory slot connector, and the total number of data conduits is at least 72 data conduits. |

28.    Micron has not directly or indirectly infringed any claim of the '366 patent, either literally or under the doctrine of equivalents, at least because the accused Micron DIMM products do not employ, incorporate, or otherwise make use of, all of the limitations of the independent claims of the '366 patent.

29.    For example, each independent claim recites a "controller" limitation (**claim 1** "a controller including a voltage monitor circuit and nonvolatile memory, the controller coupled to the PCB and to an input voltage supply line of the set of voltage supply lines, the voltage monitor circuit configured to: (i) monitor an input voltage supplied via the input voltage supply line; (ii) generate a trigger signal upon detecting a trigger condition; and (iii) transmit the trigger signal to at least one other portion of the controller, wherein the controller is configured to perform, in response to the trigger signal, a write operation to write data into the nonvolatile memory, and wherein the trigger condition occurs when the input voltage exceeds a first threshold voltage"

**claim 16** "a controller including a voltage monitor circuit and a data storage element configured to store a plurality of data bits, the controller coupled to the PCB and to an input voltage supply line of the set of voltage supply lines, the voltage monitor circuit configured to: (i) monitor an input voltage supplied via the input voltage supply line; (ii) generate a trigger signal upon detecting a trigger condition; and (iii) transmit the trigger signal to at least one other portion of the controller, wherein, in response to the detected trigger condition, the controller is configured to periodically perform, at regular intervals of time, a plurality of write operations, including a first write operation to write a first set of data bits into a first portion of the data storage element"; and **claim 29** "a controller including a voltage monitor circuit and a data storage element configured to store a plurality of data bits, the controller coupled to the PCB and an input voltage supply line of the set of voltage supply lines, the voltage monitor circuit configured to: (i) monitor an input voltage supplied via the input voltage supply line; (ii) generate a trigger signal upon detecting a trigger condition; and (iii) transmit the trigger signal to at least one other portion of the controller, wherein the controller is configured to perform, in response to the trigger signal one or more write operations to write data into the data storage element"). Micron's DIMM products do not satisfy these claim elements.

30.     As another example, each independent claim recites a "converter" limitation (**claim 1** "first, second, third, and fourth converter circuits coupled to the PCB and to the input voltage supply line, and configured to receive power from the input voltage supply line and to deliver power via first, second, third, and fourth regulated voltage lines, wherein the set of components includes"; **claim 16** "first, second, third, and fourth converters coupled to the PCB and to the input voltage supply line and configured to receive power from the input voltage supply line and to deliver power via first, second, third, and fourth regulated voltage lines"; **claim 29** "first, second,

10

third, and fourth converter circuits coupled to the PCB and to the input voltage supply line and configured to receive power from the input voltage supply line and to deliver power via first, second, third, and fourth regulated voltage lines").  Micron's DIMM products do not satisfy these claim elements.

31.    As another example, each independent claim recites "a fourth component configured to receive power via at least the fourth regulated voltage line."  Micron's DIMM products do not satisfy these claim elements.

32.    As another example, each independent claim recites "wherein each component of the set of components: (i) is electrically connected to one or more of the first, second, third, and fourth regulated voltage lines; and receives power only via the one or more of the first, second, third, and fourth regulated voltage lines." Micron's DIMM products do not satisfy these claim elements.

33.     Micron, its customers, and its end users are not liable for infringement of the '366 patent for any DIMM product made, imported, or sold by Micron.

34.    A substantial, immediate, and real controversy exists between Micron and Netlist regarding whether Micron or its customers or end users infringe the '366 patent by making, using, selling, and/or offering for sale Micron DIMM products in the United States, or by importing Micron DIMM products into the United States.  A judicial declaration is necessary to determine the parties' respective rights regarding the '366 patent.

35.    Micron seeks a judgment declaring that Micron and its customers and end users do not infringe the '366 patent, either literally or under the doctrine of equivalents, by making, using, selling, and/or offering for sale the Micron DIMM products in the United States, or by importing the Micron DIMM products into the United States, either directly under 35 U.S.C. § 271(a) or

indirectly under 35 U.S.C. § 271(b)–(c).

## JURY DEMAND

Micron demands a jury trial on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Micron prays for judgment and relief as follows:

a)    Declare that Micron does not directly or indirectly infringe any claim in the '366 patent, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive relief based on any claim in the '366 patent;

b)    Declare that Netlist is barred from seeking and/or enforcing injunctive relief against Micron (including its affiliates) or its direct or indirect customers and end-users in any jurisdiction with respect to any alleged infringement of the '366 patent;

c)    Enjoin Netlist from seeking and/or enforcing injunctive relief against Micron (including its affiliates) or its direct or indirect customers and end users in any jurisdiction with respect to any alleged infringement of the '366 patent;

d)    Declare that judgment be entered in favor of Micron and against Netlist on each of Micron's claims;

e)    Find that this is an exceptional case under 35 U.S.C. § 285;

f)    Award Micron its costs and attorneys' fees in connection with this action;

g)    Award Micron pre-judgment and post-judgment interest; and

h)    Such further and additional relief as the Court deems just and proper.

Dated: July 29, 2025

*Of counsel:*

Natalie Arbaugh
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453 6500
NArbaugh@winston.com

David P. Enzminger
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
(213) 615-1700
denzminger@winston.com

Michael R. Rueckheim
Ryuk Park
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858 6500
MRueckheim@winston.com
RPark@winston.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
agaza@ycst.com
dmackrides@ycst.com

*Attorneys for Plaintiffs Micron Technology,*
*Inc. and Micron Semiconductor Products,*
*Inc.*